IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUTUMN BOATNER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SSPS LLC d/b/a SPORTZINO, SCPS LLC d/b/a ZULA CASINO, SOCIAL GAMING LLC d/b/a FORTUNE COINS, BLAZESOFT LTD., and BLAZEGAMES, INC.<br><br>*Defendants*. | Case No. 1:25-cv-3251-DEH<br><br>Hon. Dale E. Ho |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW

Plaintiff respectfully requests that the Court certify for interlocutory review its November 25, 2025 Order granting Defendants' motion to compel arbitration, (dkt. 70). In that Order, this Court held that an arbitration agreement is null and void—and thus unenforceable—under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, (the "Convention") in only two circumstances: "(1) when it is subject to an internationally recognize defense such as duress, mistake, fraud, or waiver, or (2) when it contravenes fundamental policies of the forum state." (*Id.* at 4 (quoting *SSI (Beijing) Co. Ltd. v. Prosper Bus. Dev. Corp.*, No. 18 Civ. 8408, 2020 WL 6323938, at *9 (S.D.N.Y. July 30, 2020)).) In so holding, this Court rejected Plaintiff's argument that when the parties have included a choice-of-law clause in their agreement, the substantive law chosen by the parties—rather than a common law of internationally recognized defenses—governs the null and void inquiry under the Convention. (*Id.*) The question of when to apply and when to disregard a contractual choice-of-law clause in cases under the Convention has caused substantial confusion among the district

1

courts in this Circuit. *See, e.g.*, *FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc.*, 754 F. Supp. 2d 628, 634 (S.D.N.Y. 2010) ("Where the choice of law in a Convention case is between the law specified by the choice-of-law clause and federal common law, Second Circuit precedent has been less than crystal clear."); *Desarrolladora La Ribera v. Anderson*, No. 24-cv-67, 2024 WL 5186600, at *13 n.17 (S.D.N.Y. Dec. 20, 2024) ("The lower federal courts have frequently acknowledged the rocky precedential landscape on this point.") (quotations omitted). Interlocutory review would allow the Second Circuit to provide much-needed clarity on this complicated but important question.

## ARGUMENT

A district court can certify an order for interlocutory appeal when "[the] order involves a controlling question of law as to which there is a substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). Those elements are satisfied here and support certification of the order.

## I. THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW.

To satisfy the first requirement of interlocutory review—the presence of a controlling question of law—the order must involve an issue that is both a "question of law" and "controlling." *Id.* An issue is a question of law if it is "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *S.E.C. v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 713 (S.D.N.Y. 2025) (quotations omitted). The issue here—whether the substantive law selected by a contractual choice-of-law clause applies to an arbitrability dispute under the Convention—is such a question. *See id.* at 714 (recognizing issue that could be decided "based on the pleadings and without a factual record" was a question of law).

That question is also controlling. A question of law is "controlling" for purposes of interlocutory review where "[i] reversal of the district court's opinion could result in dismissal of the action, [ii] reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or [iii] the certified issue has precedential value for a large number of cases." *Id.* at 713 (quotations omitted). The latter two grounds apply here, either of which is sufficient to establish the "controlling" requirement.

First, reversal of this Court's order compelling arbitration would significantly affect the conduct of the action. "If the Second Circuit hears the appeal and holds that Plaintiff cannot be compelled to arbitrate, it will have saved the parties the expense and burden of arbitration, and allow the case to proceed to resolution in district court." *Islam v. Lyft, Inc.*, No. 20-cv-3004, 2021 WL 2651653, at *5 (S.D.N.Y. June 28, 2021) (certifying order granting motion to compel arbitration for interlocutory review); *see also Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996), *as amended* (July 5, 1996) ("[A]n order may involve a controlling question of law if it could cause the needless expense and delay of litigating an entire case in a forum [arbitration] that has no power to decide the matter."). While the action would be fully litigated in this Court if the Second Circuit reverses on interlocutory appeal, proceeding along the current path means that this Court's involvement will likely be limited to confirmation or vacatur of an arbitrator's ultimate award. *See* 9 U.S.C. §§ 9, 10, 207. And that's assuming the dispute proceeds to arbitration at all. As explained in Plaintiff's opposition to the motion to compel arbitration, the arbitration clause's bar on class and collective arbitration may make individual arbitration not economically viable. (Dkt. 52 at 12–16.) This Court's ruling that the Convention's null and void inquiry is not governed by the parties' choice of Ontario law (which bars class waivers, *see id.* at 8 n.8) thus "not only may be controlling but, for all intents and purposes, may also be final[.]" *In*

3

*re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019); *see also In re A2P SMS Antitrust Litig.*, No. 12-cv-2656, 2015 WL 876456, at *6 (S.D.N.Y. Mar. 2, 2015) (certifying arbitrability issue for interlocutory review where inability to proceed as a class "may cause the plaintiff to abandon claims that do not justify the cost of solo litigation"). Simply put, reversing the Order granting Defendants' motion to compel arbitration on interlocutory appeal would have a significant impact on the conduct of this action.

Second, appellate resolution of the question here would have precedential value for a large number of cases. This case is just one of several brought against similar online gambling companies whose terms of service include both arbitration and foreign choice-of-law clauses, and more are sure to follow.[1] Though obviously not binding outside the circuit, a Second Circuit opinion deciding whether a party choice-of-law clause governs the Convention's null and void inquiry would nevertheless provide persuasive precedential value to those courts and litigants. *See Islam*, 2021 WL 2651653, at *4 ("[I]f the Circuit decides to hear this appeal, it would provide valuable guidance to a great number of litigants and lower court judges."); *Coinbase*, 761 F. Supp. 3d at 716 (finding question controlling because it "is being litigated in numerous cases pending in this District and across the country") (quotations and alterations omitted).

---

[1] *See, e.g.*, *Ambrosia v. Blazesoft Ltd.*, No. 25-cv-01723 (N.D. Ill.); *Ill. Gambling Recovery v. Blazegames, Inc.*, No. 2025-L-006999 (Ill. Cir. Ct.); *Ohio Gambling Recovery LLC v. VGW Holdings Ltd.*, No. 2025 CV 01412 (Ohio Comm. Pleas); *Massachusetts Gambling Recovery LLC v. Blazesoft, Ltd.*, No. 2584CV01502 (Mass. Super. Ct.); *Mayhone v. MW Servs. Ltd.*, No. 25-cv-08956 (N.D. Ill.); *Boucher v. MW Servs. Ltd.*, No. 25-cv-02793 (E.D. Cal.); *King v. VGW, Ltd.*, No. 25-cv-15114 (D.N.J.); *Gafa v. VGW Holdings US Inc.*, No. 25-cv-01010 (D. Utah); *Ecklund v. VGW Holding US, Inc.*, No. 25-cv-00171 (D. Utah); *Ewing et al. v. VGW Holdings US, Inc.*, No. 25-cv-00057 (E.D. Tenn.); *Viel v. VGW, Ltd.*, No. 25-cv-12416 (D. Mass.); *Simonich v. VGW, Ltd.*, No. 25-cv-01758 (N.D. Ohio); *Brown v. VGW Holdings US Inc.*, No. 25-cv-07071 (N.D. Cal.); *Gardner v. Sweepsteaks Ltd.*, No. 25-cv-00994 (D. Utah); *Dixon v. Sweepsteaks Ltd.*, No. 25-cv-09641 (D.S.C.); *Hall v. Sweepsteaks Ltd.*, No. 25-cv-00345 (M.D. Ala.); *Thomas v. Sweepsteaks Ltd.*, No. 25-cv-00136 (N.D. Miss.); *California v. Sweepsteaks Ltd.*, No. 25STCV25304 (Cal. Super. Ct.); *Wolters v. Sweepsteaks Ltd.*, No. 25-cv-03280 (D. Minn.).

Additionally, even outside the online gambling context, the application of choice-of-law clauses to international arbitration agreements under the Convention is almost certainly an issue of great interest and importance to future cases in this circuit. *See United States v. New York*, No. 25-cv-3656, 2025 WL 2208941, at *4 (S.D.N.Y. Aug. 4, 2025) (noting that the Southern District of New York "is a hub for national and international commercial activity").

Because reversal would significantly affect the conduct of this litigation and—whether reversing or affirming—a Second Circuit decision on the issue would provide important precedential value to other cases, the order sought to be certified contains a controlling issue of law.

## II. THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION.

There is also substantial ground for difference of opinion as to whether party-chosen law governs the null and void inquiry under the Convention. Courts in this circuit "have frequently acknowledged the 'rocky precedential landscape'" regarding the application of contractual choice-of-law clauses in cases under the Convention. *Desarrolladora*, 2024 WL 5186600, at *13 n.17 (quoting *SSI (Beijing)*, 2020 WL 6323938, at *12) (collecting cases). As one court in this district noted, "[w]here the choice of law in a Convention case is between the law specified by the choice-of-law clause and federal common law, Second Circuit precedent has been less than crystal clear." *FR 8 Singapore*, 754 F. Supp. 2d at 634.

For example, in *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004), the Second Circuit explained that "applying the parties' choice of law is the only way to ensure uniform application of arbitration clauses within the numerous countries that have signed the New York Convention." Thus, in that case—as well as in *Sphere Drake Insurance Ltd. v. Clarendon National Insurance Co.*, 263 F.3d 26 (2d Cir. 2001)—the Second Circuit applied

5

party-chosen law to determine whether to enforce an arbitration agreement under the Convention. *Motorola*, 388 F.3d at 51 (applying party-chosen Swiss law to determine enforceability of arbitration agreement under convention); *Sphere Drake*, 263 F.3d at 32 & n.3 (applying New York and New Jersey law pursuant to choice-of-law clauses to determine whether arbitration agreements were void under the Convention). In a subsequent case, however, the Second Circuit declined to apply an Egyptian choice-of-law clause to arbitrability issues under the Convention—without discussing or even mentioning *Motorola* or *Sphere Drake*. *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 661–62 (2d Cir. 2005). "Thus," as one district court summed up in the wake of these decisions, "it appears that *Sarhank* counsels against honoring the choice-of-law clause in Convention cases when deciding the question of arbitrability, while *Motorola* counsels for honoring the clause." *FR 8 Singapore*, 754 F. Supp. 2d at 635 (choosing to follow *Motorola*).

Courts in this district—including this Court—have attempted to explain why party-chosen law should or shouldn't apply in a particular case under the Convention by drawing various distinctions. *See, e.g.*, dkt. 70 at 4 ("[T]he Second Circuit in *Sphere Drake* looked to state law to determine whether contract *formation* occurred—*i.e.*, whether it came into legal existence—not whether the arbitration agreement was otherwise unenforceable."); *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 355 (S.D.N.Y. 2005) (attempting to reconcile *Motorola* and *Sarhank* by "conclud[ing] that a choice-of-law clause will govern where a nonsignatory to a particular arbitration agreement seeks to enforce that agreement against a signatory, but not where a signatory seeks to enforce the agreement against a nonsignatory"); *FR 8 Singapore*, 754 F. Supp. 2d at 635–36 (rejecting *Republic of Ecuador*'s attempt to reconcile *Motorola* and *Sarhank*, instead proposing that the proper distinction was that "*Sarhank*

6

[involved] a motion to confirm a foreign arbitral award under the Convention, not one to compel arbitration"); *SSI (Beijing)*, 2020 WL 6323938, at *11–12 (reading *Motorola* and *Sarhank* as limited to "the signatory-versus-nonsignatory question"); *Holzer v. Mondadori*, No. 12 Civ. 5234, 2013 WL 1104269, at *11 (S.D.N.Y. Mar. 14, 2013) (suggesting that proper distinction is between "determining the scope of arbitrable issues"—to which party-chosen law does not apply—and resolving "issues concerning the validity, revocability, and enforceability of contracts generally"—to which party-chosen law *does* apply) (quoting *FR 8 Singapore*, 794 F. Supp. 2d at 454) (quotations omitted).[2]

Perhaps some or all of these distinctions are relevant and explain the different outcomes, but they don't follow obviously from either the Convention itself or current Second Circuit precedent. Reading the cases from both the circuit and district courts, it is difficult to draw any sort of throughline explaining when a contractual choice-of-law clause should or shouldn't apply in a case under the Convention. Indeed, the Restatement on International Arbitration draws no such distinctions, stating simply that "a court determines whether an agreement is null and void [under the Convention] in accordance with . . . the law to which the parties have subjected the arbitration agreement[.]" Restatement (Third) of U.S. Law of International Commercial and Investor-State Arbitration § 2.14(b)(1).

This Court may be correct that the difference between contract formation and contract enforceability defenses distinguishes this case from *Sphere Drake* (and it may be the case that the difference between signatory and nonsignatory arbitrability defenses distinguishes *Motorola*). But there is, at the very least, some tension between this Court's determination that the parties'

---

[2] Some courts have suggested that the distinction is simply that party-chosen law does not apply "in cases where neither party raised the choice-of-law issue." *Desarrolladora*, 2024 WL 5186600, at *13 (quoting *Holzer*, 2013 WL 1104269, at *10).

choice of Ontario law does not apply here and the Second Circuit's application of party-chosen law in *Sphere Drake* and *Motorola*.[3] This Court need not be convinced that it was wrong to certify its Order for interlocutory review, only that a substantial ground for difference of opinion exists. *See In re General Motors*, 427 F. Supp. 3d at 394 ("Plaintiffs fail to persuade the Court that it erred . . . . Nevertheless, . . . the Court concludes that certification of an interlocutory appeal is appropriate."). The tension between this Court's ruling on the one hand and *Sphere Drake* and *Motorola* on the other (as well as the Restatement's understanding that party-chosen law governs the null and void inquiry in all cases under the Convention) indicates the existence of such a disagreement. *See id.* at 392–93 (certifying order for interlocutory review, stating "[a]lthough the Court believes that, for the reasons discussed previously and above, such cases are ultimately distinguishable, the result reached by the Court is certainly in tension with some of them"). Interlocutory review would provide the Second Circuit an opportunity to provide much-needed clarity on this complicated question.

### III. IMMEDIATE APPEAL MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION.

Finally, immediate review may materially advance the ultimate termination of this litigation. Although this requirement is "technically distinct" from the first requirement for interlocutory review (controlling question of law), "in practice the two questions are closely

---

[3] There is also some tension in finding that party choice-of-law applies to formation but not enforceability in the international arbitration context, when exactly the opposite is true in determining whether an agreement to arbitrate exists in the domestic arbitration context and contract law more generally. *See, e.g.*, *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 287 (S.D.N.Y. 2025) ("[T]o determine whether a contract [to arbitrate] has been formed, the Court must first determine the correct law to apply without regard to any choice-of-law clause contained in the contract itself, as formation is a prerequisite to the enforcement of such a clause.").

connected." *In re General Motors*, 427 F. Supp. 3d at 393. "The third factor is therefore satisfied for many of the same reasons as the first." *Id.* As noted above, "[i]f the Second Circuit hears the appeal and holds that Plaintiff cannot be compelled to arbitrate, it will have saved the parties the expense and burden of arbitration[.]" *Islam*, 2021 WL 2651653, at *5; *see also Chambers v. Maplebear, Inc.*, 746 F. Supp. 3d 206, 218 (S.D.N.Y. 2024), *appeal dismissed* (May 7, 2025). "This is exactly the type of 'protracted' and 'fruitless litigation' that § 1292(b) was designed to avoid." *Silva v. Schmidt Baking Distribution, LLC*, No. 23-cv-01695, 2024 WL 3566168, at *5 (D. Conn. July 29, 2024) (certifying order granting motion to compel arbitration for interlocutory appeal) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996)).

Furthermore, in evaluating this element, the Court can "take[] note of the 'system-wide costs and benefits of allowing the appeal,' including 'the impact that an appeal will have on other cases.'" *Islam*, 2021 WL 2651653, at *5 (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Staordinaria*, 921 F.2d 21, 24 (2d Cir. 1990)). Again, as noted above, the issue of when a contractual choice-of-law clause applies in cases under the Convention is likely to recur in pending and future cases in this Circuit and throughout the country. Thus, while "an interlocutory appeal '*may* materially advance the ultimate termination of the litigation,' 28 U.S.C. § 1292(b) (emphasis added), . . . it would certainly . . . conserve judicial resources in the longer term by resolving important and oft-arising legal questions." *Islam*, 2021 WL 2651653, at *5.

## CONCLUSION

For the reasons stated above, this Court should certify its November 25, 2025 Order granting Defendants' motion to compel arbitration, (dkt. 70), for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Respectfully Submitted,

**AUTUMN BOATNER,** individually and on behalf of all others similarly situated,

Dated: December 9, 2025

By: */s/ Hannah Hilligoss*
One of Plaintiff's Attorneys

J. Eli Wade-Scott (*pro hac vice*)
ewadescott@edelson.com
Michael W. Ovca (*pro hac vice*)
movca@edelson.com
Hannah Hilligoss (*pro hac vice*)
hhilligoss@edelson.com
Ari J. Scharg (*pro hac vice*)
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

Matthew S. Tripolitsiotis
mtripolitsiotis@burnscharest.com
Burns Charest LLP
757 Third Ave, 20th Floor
New York, NY 10017
Tel: (469) 895-5269

*Counsel for Plaintiff and the putative classes*

## CERTIFICATE OF COMPLIANCE

I, Hannah Hilligoss, hereby certify that **Plaintiff's Memorandum of Law in Support of Her Motion to Certify Order for Interlocutory Review** contains 2,875 words, which complies with the word limit of L.R. 7.1(c).

*/s/ Hannah Hilligoss*
Hannah Hilligoss